UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CODY NICKISHER, | : |
|     Plaintiff, | : **JURY DEMANDED** |
| | : |
| | : No.: |
|     v. | : |
| | : |
| MSK MANAGEMENT, LLC d/b/a DOMINO'S PIZZA | : |
| | : |
| And | : |
| | : |
| DOMINO'S PIZZA, | : |
|     Defendants. | : |

## COMPLAINT

Plaintiff, Cody Nickisher, by and through his undersigned counsel, files this Complaint alleging that his rights pursuant to Title VII of the Civil Right Act of 1964, as amended, 42 U.S.C. § 2000(d), *et. seq.*, ("Title VII"), have been violated and avers as follows:

### I. PARTIES AND JURISDICTION

1. Plaintiff, Cody Nickisher (hereinafter "Plaintiff") is an adult individual residing in Northampton, PA with a mailing address of 1402 Main Street, Northampton, PA 18067.

2. Defendant, MSK Management, LLC d/b/a Domino's Pizza (hereinafter "Defendant" or "MSK"), is a company existing under the laws of the State of New Jersey, with a principal place of business at 441 Main Street, East Orange, NJ 07018.

3. Defendant, Domino's Pizza (hereinafter "Defendant" or "Domino's"), is a company existing under the laws of the Commonwealth of Pennsylvania, with a principal place of

1

business at 971 Main Street, Northampton, PA 18067. Both Defendants are hereinafter referred to collectively as "Defendants."

4. Defendants were Plaintiff's employer for all relevant times herein.

5. Plaintiff worked for the Defendants' facility located at 971 Main Street, Northampton, PA 18067.

6. At all times material hereto, Defendants qualify as Plaintiff's employer.

7. At all times material hereto, Defendants acted by and through their agents, servants, and employees, each of whom acted at all times relevant herein in the course and scope of their employment with and for Defendants.

8. Plaintiff has exhausted his administrative remedies pursuant to the Equal Employment Opportunity Act and the Pennsylvania Human Relations Act. (See Exhibit "A," a true and correct copy of a "right-to-sue" issued by the Equal Employment Opportunity Commission).

9. This action is instituted pursuant to Title VII of the Civil Rights Act of 1964, the Pennsylvania Human Relations Act and applicable federal and state law.

10. Jurisdiction is conferred by 28 U.S.C. §1331 and §1343.

11. Supplemental jurisdiction over the Plaintiff's state law claims is conferred pursuant to 28 U.S.C. § 1367.

12. The venue is properly laid in this district because the Defendants conduct business in this district and because a substantial part of the acts and omissions giving rise to the claims set forth herein occurred in this judicial district. 28 U.S.C. § 1391(b)(1) and (b)(2). Plaintiff was working in the Middle District of Pennsylvania at the time of the illegal conduct by the Defendants, as set forth herein.

## II. FACTS

13. On or about January 6, 2020, Defendants hired Plaintiff as an Assistant Manager, working out of their Northampton, PA location as captioned above.

14. Plaintiff is a member of the LGBTQ community.

15. During the course of his employment, Plaintiff was approached by one of Defendants' minor employees, with the complaint that she was being sexually harassed by one of Defendants' drivers, Brett Albert.

16. Said minor employee informed Plaintiff that she had reached out to Defendants' general manager, Jason Berg, and district manager, Doug Yocum, with no action being taken against Mr. Albert.

17. Said employee asked Plaintiff to file a report on her behalf, which Plaintiff did on or about September 16, 2020.

18. Following this, also on September 16, 2020, Plaintiff was training with another of Defendants' managers, Karrie Kula, on scheduling.

19. During the course of this training, Plaintiff would stop to help with orders when things became busy.

20. On one such occasion, Defendants' assistant manager, Shane Lewis, started screaming at Plaintiff, "It's so nice of you to come do your job. I thought she (meaning Ms. Kula) was bringing you a stupid fucking book, not going over this stupid fucking general manager shit with you."

21. Following this, Mr. Lewis announced he was stepping outside for a cigarette; however, when he came back to the store, Mr. Lewis announced to his co-workers that he was

3

"feeling better" because he went home and "took a couple of shots and smoked a bowl of marijuana."

22. On another occasion, Mr. Lewis and Plaintiff were working a closing shift, when one of Defendants' drivers, Anthony Arroyo admitted that he was "shitfaced drunk".

23. Plaintiff reported this to Mr. Lewis, and stating that Mr. Arroyo should not be allowed to continue to drive that night,

24. Mr. Lewis responded that he "didn't want to be fucked out of a closer tonight" and allowed Mr. Arroyo to continue to drive under the influence of alcohol.

25. On or about September 23, 2020, Plaintiff filed additional reports to Defendants against Mr. Albert and also against Mr. Lewis, regarding illegal activities-that they were involved in (i.e. stalking patrons and reporting to work under the influence) which subsequently ended in both employees' termination.

26. Plaintiff also filed a report to Defendant against Defendants' District Manager Doug Yocum who had been aware of the activities of Mr. Albert and Mr. Lewis and took no action.

27. Plaintiff's report was to have remained anonymous under Defendants' own company whistleblower agreement; however, somehow Mr. Yocum was forwarded Plaintiff's report directly.

28. Following the termination of Mr. Lewis, Plaintiff's co-workers became aware that Plaintiff's report was the cause of Mr. Lewis' and Mr. Albert's termination.

29. As such, Plaintiff's co-workers became hostile toward him, and Mr. Yocum refused to speak with him.

30. The aforementioned behavior began immediately the day Plaintiff filed his complaint and continued to the day of his termination.

31. On one occasion, a group chat message was sent out by John Hauser with a picture of a rainbow that had a sticker next to it with the word, "Bitch" written on it. After this group chat message was sent, some employees starting refereeing to Plainitff as, "Bitch" due to his sexual orientation.

32. The district manager Doug Yocum and Jason Berg the General Manager were included as recipients of this group chat message, yet took no action to stop the discrimination towards Plaintiff once they received this message.

33. On or about November 12, 2020, Defendants terminated Plaintiff's employment, stating that "[Plaintiff] made people feel uncomfortable" and that Plaintiff's co-workers "didn't want to work with him." Plainitff took this personally because of his sexual orientation.

34. Plaintiff was never given a formal write-up, disciplinary action, or documentation regarding any complaints or issues Defendants purportedly had with his work.

35. As set forth above, Plaintiff was subjected to a hostile work environment based on his sexual orientation resulting in the termination of Plaintiff's employment. Defendants' employees would often comment that they didn't want to work with Plaintiff because he made them feel uncomfortable and this was the reason provided by Doug Yocum to Plaintiff for his termination. Employee Ben Barlip was witness to Mr. Yocum's statement to Plaintiff.

36. As set forth above, the Defendant engaged in discriminatory, disparate and retaliatory treatment of Plaintiff resulting in the termination of Plaintiff's employment.

37. As a direct and proximate result of the Defendant's conduct, Plaintiff sustained great economic loss, future lost earning capacity, lost opportunity, loss of future wages and earnings, as well as emotional distress, humiliation, pain and suffering, personal injury damages and other damages as set forth below.

## III. CAUSES OF ACTION

### COUNT I:

### DISCRIMINATION AND HARASSMENT BASED ON SEX – SEXUAL ORIENTATION, GENDER IDENTITY, GENDER EXPRESSION, GENDER NON-CONFORMITY, AND/OR GENDER STEREOTYPING – IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, U.S.C. § 2000e, et seq.

38. Plaintiff hereby incorporates by reference each and every paragraph above as if the same were set forth more fully at length herein.

39. Plaintiff is a male and a member of the LGBTQ community.

40. At all relevant times Plaintiff met the expectations and performed the job duties of the position he held for Defendants.

41. Defendants were made aware of Plaintiff's sexual orientation during the course and scope of his employment.

42. Plaintiff was discriminated against by the Defendants, as set forth above.

43. Plaintiff suffered disparate treatment by the Defendants, as set forth above.

44. As a proximate result of the Defendants' conduct, Plaintiff sustained significant damages, including but not limited to: great economic loss, future lost earning capacity, lost opportunity, loss of future wages, loss of front pay, loss of back pay, as well as emotional distress, mental anguish, humiliation, pain and suffering, consequential damages and Plaintiff has also sustained work loss, loss of opportunity, and a permanent diminution of earning power and capacity and a claim is made therefore.

45. This willful, intentional, and unlawful sexual orientation harassment and discrimination violates the laws and regulations of the United States, including without limitation, 42 U.S.C § 2000e, et seq. and requires the imposition of punitive damages.

46. As a result of the conduct of the Defendant's management, Plaintiff demands punitive damages.

## COUNT II:
### VIOLATIONS OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964
(Hostile Work Environment; 42 U.S.C.A. § 2000 et seq)

47. Plaintiff incorporates the preceding paragraphs as if fully set forth at length herein.

48. As described above, Plaintiff was subjected to discrimination and a hostile work environment based on his sexual orientation.

49. The aforementioned actions and conduct were severe, pervasive and continuous, and created a hostile work environment for Plaintiff.

50. Defendants' conduct, as set forth above, violated Title VII of the Civil Right Act of 1964.

51. As a proximate result of Defendants' conduct, Plaintiff sustained significant damages including by not limited to: great economic loss, future lost earning capacity, lost opportunity, lost future wages, loss of front pay and back pay, as well as emotional distress, mental anguish, humiliation, personal injury type damages, pain and suffering, consequential damages, as well as a work loss, loss of opportunity and a permanent diminution of his earning power and capacity, and a claim is made therefore.

## COUNT III:
### NEGLIGENT TRAINING, HIRING AND SUPERVISION/RETENTION

52. Plaintiff incorporates the preceding paragraphs as set forth above as if fully set forth at length herein.

53. Defendants knew or should have known their employees were engaging in illegal activity.

54. Defendants' continued employment of said employees situation in which Plaintiff was harmed and retaliated against for reporting same.

55. Plaintiff's loss resulted from Defendants' failure to exercise ordinary care to hire, retain and fail to train said employees which caused harm to Plaintiff.

56. Defendant knew or had reason to know of the necessity and ability to control said employees and failed to do so.

57. As a direct and proximate result of Defendants' conduct, Plaintiff has sustained damages, including but not limited to physical injury, great mental and emotional distress, pain and suffering, economic loss, personal injury, loss of consortium and other damages to be claimed at the time of trial.

58. Defendants' aforementioned conduct was malicious, willful and wanton and as such, Plaintiff is entitled to punitive damages.

59. Based on Defendants' aforementioned conduct, Plaintiff makes a claim for attorneys fees and costs of suit.

## COUNT IV:
## VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT
## RETALIATION

60. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

61. At set forth above, Plaintiff made complaints about sexual discrimination and harassing conduct in the workplace and lodged complaints under Defendants' Company Whistleblower Policy and as such, Plaintiff was engaged in protected activity under Title VII of the Civil Rights Act.

62. Defendant took adverse action against Plaintiff by terminating his employment.

63. As set forth above, Plaintiff' participation in protected activity was a motivating factor in Defendant decision to terminate his employment.

64. As such, Defendant decision to terminate Plaintiff' employment is a retaliatory action prohibited by the Civil Rights Act of 1964, §704(a).

65. As a proximate result of Defendant conduct, Plaintiff sustained significant damages, including but not limited to: great economic loss, future lost earning capacity, lost opportunity, loss of future wages, loss of front pay, loss of back pay, as well as emotional distress, mental anguish, humiliation, pain and suffering, consequential damages and Plaintiff has also sustained work loss, loss of opportunity, and a permanent diminution of earning power and capacity and a claim is made therefore.

66. As a result of the conduct of Defendant, Plaintiff hereby demands punitive damages.

67. Pursuant to the Civil Rights Act of 1964, §704(a), 42 U.S.C. §2000e-3(a), *et seq.*, Plaintiff demands attorneys' fees and court costs.

### COUNT V:
### VIOLATION OF THE PENNSYLVANIA HUMAN RELATIONS ACT
### (P.S. §951, et sec)

68. Plaintiff incorporates the preceding paragraphs as if fully set forth at length herein.

69. At all times material hereto, and pursuant to the Pennsylvania Human Relations Act, 43 P.S. § 951, et seq,, an employer may not discriminate against an employee based sexual orientation.

70. Plaintiff is a qualified employee and person within the definition of Pennsylvania Human Relations Act, 43 P.S. § 951, et seq,.

...

71. Defendants are "employers" and thereby subject to the strictures of the Pennsylvania Human Relations Act, 43 P.S. § 951, et seq,.

72. As described above, Plaintiff, in the course and scope of his employment, was subjected to a harassing and hostile work environment and terminated from employment and retaliated against after making a complaint of harassment.

73. Defendants failed to remedy the harassment despite actual or constructive knowledge.

74. Defendants' conduct constitutes a violation of the Pennsylvania Human Relations Act, 43 P.S. § 951, et seq,.

75. As a proximate result of Defendants' conduct, Plaintiff sustained significant damages, including but not limited to: great economic loss, future lost earning capacity, lost opportunity, loss of future wages, loss of front pay, loss of back pay, loss of tips as well as personal injury, emotional distress, mental anguish, humiliation, pain and suffering, consequential damages and Plaintiff has also sustained work loss, loss of opportunity, and a permanent diminution of earning power and capacity and a claim is made therefore.

76. As a result of the conduct of Defendants' owners/management, Plaintiff hereby demands punitive damages.

77. Pursuant to the Pennsylvania Human Relations Act, 43 P.S. § 951, et seq. Plaintiff demands attorneys fees and court costs.

**RELIEF REQUESTED**

**WHEREFORE,** Plaintiff, CODY NICKISHER, demands judgment in his favor and against the Defendants, MSK MANAGEMENT, LLC and DOMINO'S PIZZA, in an amount in excess of $150,000.00 together with:

A. Compensatory damages, including but not limited to: back pay, front pay, past lost wages, future lost wages, lost pay increases, lost pay incentives, lost opportunity, lost benefits, lost future earning capacity, injury to reputation, mental and emotional distress, pain and suffering;

B. Punitive damages;

C. Attorney's fees and costs of suit;

D. Interest, delay damages; and,

E. Any other further relief this Court deems just proper and equitable.

Date: December 17, 2021        **LAW OFFICES OF ERIC A. SHORE, P.C.**

BY: _____
**MARY LEMIEUX-FILLERY**
2 Penn Center
1500 JFK Blvd, Suite 1240
Philadelphia, PA 19102
Tel.: (267) 546-0132
Email: MaryF@EricShore.com
*Attorneys for Plaintiff, Cody Nickisher*

## VERIFICATION

I, Cody Nickisher, verify that the statements made in the foregoing Civil Action Complaint are true and correct to the best of my knowledge, information and belief.

I understand that false statements herein made are subject to penalty of law, relating to unsworn falsification to authorities.

12/17/2021

(Date Signed)

*Cody Nickisher* (electronically signed)

Cody Nickisher